McFarland, J.,
delivered the opinion of the court:
The substantial allegations of this cross bill are, that complainant, being -very much indebted, sold his interest in certain lands to- J. P. T. McCroskey, for the purpose of enabling him to pay his debts, fully intending at the time to repurchase said lands. McCroskey, in paying for the lands, assumed complainant’s debts, and among others, a debt to complainant’s brother, W. G. Clark, of $400, with four or five years’ interest.
Complainant, finding himself unable to raise money sufficient, to repurchase, applied to said brother, W. G. Clark, to advance the money for him. Said W. G. agreed to- do so, and together they went to McCroskey and contracted to repurchase the land. McCroskey refused to malte title until all the pinchase money was paid or secured. Said W. G. did furnish some money, and also included the debt of $400 above mentioned (that is, the debt McCroskey had *77 assumed to pay "W. G. Clark for complainant),, and gave bis note for the balance, $260, and bad tibe title made to bimself without complainant’s knowledge or consent.
Complainant charges that there was a definite understanding between him and W. G. Clark, that the-latter was to pay for the land, and that the title was- to be made .to complainant, and complainant was to pay said W. G. all money pai-d by him to McCroskey on the purchase. That, although the deed from McCroskey recited a consideration of - dollars, W. G. Clark only paid $1,000 or $1,100. That the $400 debt above mentioned as included by W. G. in the purchase, had, before this, been liquidated by complainant, and ~W. G. was being paid this sum twice. Said W. G. often said that he had bought the land for complainant, and intended to make him 'a title when the money was refunded, but died suddenly without making any arrangements about it. Complainant retained the possession of the land, renting the same to said W. G. Clark, who was to allow complainant a credit for the rents, which were worth from $100. to $150 a year. Said land was worth $3,000, although said W. G. only- paid $1,000 or $1,100 for the same. Charges that the- understanding was definite and oft repeated in the presence of others that the land belonged to complainant, and W. G. only expected to have his money refunded. That the $400 was fictitious, as complainant had previously paid it to said ~W. G.
Upon these allegations complainant claims the right to have the land conveyed to him by the heirs or representatives of ~W. G- Clark, upon paying .the amounts paid by the latter; or, in short, that "W. G. Clark held the land as mortgagee, to secure said sums. .
Demurrer was filed by the administrator and widow of said W. G. Clark, relying upon the statute of frauds, which was allowed, and the bill dismissed, arid the complainant has appealed.
It would be premature to decide whether or not the stat *78 ute of frauds applies to the-facts stated, for the reason that the heirs of W. Gr. Clark have made no defense, and the defense should properly come from them. They may, for all we know, waive the defense and agree to the relief prayed for. The legal title is in them, and so far as we can see, they are the owners of the land. The administrator and widow have no direct interests. Without deciding the question presented by the demurrer, further than to hold that it is not a defense for the administrator, the decree dismissing the bill will be reversed, the demurrer overruled, and the cause remanded to- the end that it be brought to hearing against the heirs.
The administrator and widow will pay the costs of this court.